THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRANK ALMANZA, Defendant.—(ALLAN A. ACKERMAN, Contemnor-Appellant.)

(No. 74-106;

Third District—February 13, 1975.

Allan A. Ackerman, of Ackerman, Durkin & Egan, of Chicago, for appellant.

L. E. Ellison, State's Attorney, of Morrison (Joseph Spiezer, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Frank Almanza Jr. was charged in indictment for violation of the Illinois Controlled Substances Act. After several contiuances trial was set for Tuesday, December 11, 1973, at 9:30 A.M. in the circuit court of Whiteside County. The State's attorney, L. E. Ellison, was advised on Saturday, December 8, that defense counsel, Allan Ackerman of Chicago, would not be able to appear on December 11 but could proceed on December 12. Ellison told Ackerman that this fact should be communicated by Ackerman to the court. Ellison did not himself so inform the Court. Witnesses were notified to appear and prospective jurors were summoned. On December 11, 1973, at 9:30 A.M. the State's attorney, the witnesses, and the jury were present. Almanza and his counsel, Ackerman, were not present. Judge Patton held the cause for trial, and the jury and witnesses were retained. The judge had a conversation with Thomas Durkin, a partner in the firm of Ackerman, Durkin and Egan, about 10 A.M. on the morning of December 11, 1973, and Durkin asked Judge Patton to hold the case either at 1:30 P.M. or the next day. Judge Patton told Durkin to have the defendant in court at noon and to have someone there to try the case at 1:30 P.M. Durkin told the judge someone would be there. Durkin himself had a contested divorce matter in Cook County, and his request for a continuance was denied. Ackerman stated the first knowledge he had of the mixup was when he returned from court on December 11, between 12:15 and 12:30 P.M. Once Ackerman learned of the mixup a series of phone calls to the court followed to the effect that Ackerman was ready, willing and able to appear for trial in the afternoon. He could not have gotten there before 3 P.M. Informed of this and apparently told at 1:30 P.M. that no one was coming, Judge Patton put the matter over. Ackerman failed to notify Almanza of the trial date and was without knowledge that Almanza didn't appear or that a bond forfeiture had been issued for him. Almanza was arrested on a body warrant and spent some 36 hours in jail for failure to appear at trial. Sometime later Almanza acquired other counsel which disposed of his case. (Almanza eventually pleaded guilty to the charge so that a

jury was not required to resolve the issues, and he was sentenced to a term of from 18 months to 5 years in the penitentiary.)

On January 16, 1974, a rule to show cause was entered against Ackerman, and on February 4 Judge Patton conducted a hearing which included statements by Judge Patton, Ackerman, Durkin and Ellison and found Ackerman in contempt of court for failure to appear with and on behalf of his client. Judge Patton assessed a fine of $500 and a 36-hour jail sentence which was suspended. The order recites that the period of confinement for Ackerman was "commensurate with the period of time his client, Frank Almanza, Jr. was committed to the county jail due to the negligence of his attorney Allan Ackerman." According o the order the basis in fact for the citation was that Ackerman was attorney for Almanza, the jury trial was set to proceed, the jury venire appeared together with the judge, State's attorney, and various prosecution witnesses, neither defendant nor anyone representing him appeared for him, the court communicated with Ackerman's partner and was informed that a member of the firm and the defendant would appear and be ready for trial by 1:30 P.M., the cause was originally set for 9:30 A.M., neither defendant nor any member of the firm appeared at 1:30 P.M., the jury was excused, a bench warrant was issued for the arrest of Frank Almanza, Almanza was arrested and spent 36 hours in jail and Almanza had not been notified of the trial by Ackerman or anyone acting on his behalf.

Due to the view we take of this case it is only necessary to consider one of the issues raised by appellant, *i.e.*, whether it was prejudicial error for the trial judge, Judge Patton, to preside at the contempt hearing. Appellant cites three cases in support of his contention that the facts here, if constituting a contempt, constitute indirect, not direct, contempt. (*People v. Westbrooks*, 242 Ill.App. 338; *People v. McDonnell*, 307 Ill.App. 368, 30 N.E.2d 80; *People v. Stafford*, 118 Ill.App.2d 453, 255 N.E.2d 17.) Although none of these cases are exactly on point, it can be held in the present case in accord with these cases and case law in general, that the contempt here, if any, would be indirect contempt, therefore necessitating a hearing and the rights of procedural due process. However, we need consider here only the propriety of Judge Patton presiding at the hearing. The following from the record should be noted:

"The Court [Judge Patton]: "All right. Now if you would like the Court will be sworn, if you would like to have it. I am going to make some statements to what I did. If you would like me sworn, I will be glad to be."

The judge then went on to testify as to his calling the Ackerman office in Chicago and all the ensuing events. This was the same judge who

ordered the rule to show cause and was to make the decision as to whether Ackerman was guilty of contempt. It may also be noted from the record that Judge Patton stated:

"\* \* \* it is not that you have offended the Court; you have nothing in your conduct that has been contemptuous of this Court at all, as far as this particular judge is concerned. But the thing that bothers me the most is that a man had to spend over thirty-six hours in jail. I don't care what he has done, if he has posted his bond and he has paid $2500 into a lawyer's pocket, I don't care if they have to get the sheriff to advise him of when his trial is or the date. They owe him something to keep him from sitting in jail for thirty-six hours."

Later, in the record, Judge Patton declared:

"As the Court stated, there is nothing in your attitude that has been contemptuous of this Court; but the fact that we had a jury in here, it was a little difficult; if it is not embarrassing to the Court, but I am sure it is embarrassing to the whole judicial system to try to explain to forty-some people as to why the case is not going to be tried and that the lawyer didn't appear. We didn't make that observation in the morning, but it became obvious in the afternoon. There was no other way. They could see Mr. Ellison. And the State, the County has been put to a considerable expense to bring these people here.

And even that can be excused, I think, but the fact that a defendant who had paid an attorney $2500 spent thirty-six hours in jail when his attorney had been advised by the Court that the man must appear at 12:00 o'clock, it would seem to me that it would behoove that office to make every effort, if no more than through the Sheriff's office, for paying for service to see that that man was notified that he was to appear before this court."

At another point, just prior to sentencing Ackerman, the court stated:

"The explanation given, I think, certainly mitigate some; but I find that there is no excuse for a man who has pocketed $2500 of a defendant's money not making more effort to let him know that he has a trial coming up on December 11 and, after his office has been advised that the man is to report at 12:00 o'clock on December 11, that more efforts than a telephone call are not made to see that that defendant is present and, at least, knows that he is to be present. To me it is a dereliction of a duty towards a client; and I find that more contemptuous than the fact that this county pays for having a jury here for a whole day. The State's Attorney's

time, the time of the Court is paid for by the State, and he is here anyway. So, that isn't as important; but I think those other things are."

Since from the foregoing remarks of the judge it seems he was quite disturbed about Almanza spending time in jail because of his failure to appear, we are at a loss to understand the judge's concern when it was his conduct which instigated the re-arrest, even though the prior events were known both to the judge and that State's attorney. Although there is ample case law support for the contention that the appointment of another judge to hear evidence in a contempt proceeding is not always required, and both cases cited by appellant, *Mayberry v. Pennsylvania*, 400 U.S. 455, 27 L.Ed.2d 532, 91 S.Ct. 499, and *In re Dellinger* (7th cir. 1972), 461 F.2d 389, are distingishable on their facts in that both cases involved rather overt personal attacks on the trial judge that could have been punished summarily, it is still evident from the record here that the remarks of the court illustrate a certain amount of personal antagonism between the court and defense counsel. Considering this factor plus the fact that Judge Patton both intended and did testify as a witness at the hearing, and considering the importance of avoiding not only the substance but also the appearance of impropriety, it is necessary under the specific facts in this case to hold that another judge should have been appointed to hear the evidence.

For the foregoing reasons, the cause is reversed and remanded for proceedings in accordance with this opinion.

Reversed and remanded.

SCOTT and DIXON, JJ., concur.